JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:20-cv-04715-SB-RAO | Date: | December 6, 2021 |
|---|---|---|---|

| Title: | *Gabriela Rosario v. 11343 Penrose Inc. dba La Vida Gentlemen's Club et al.* |
|---|---|

| Present: The Honorable | STANLEY BLUMENFELD, JR., U.S. District Judge |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT [Dkt. No. 114]**

After litigating this case for more than a year, the parties successfully mediated in June 2021, and Plaintiffs have now filed an unopposed motion for approval of their FLSA settlement. Dkt. No. 114. The Court finds this matter suitable for decision without oral argument and vacates the December 10, 2021 hearing. Fed. R. Civ. P. 78; L.R. 7-15. Because the settlement appears to be a fair and reasonable resolution of a bona fide dispute, the Court **grants** the motion.

## I. BACKGROUND

Plaintiffs worked as exotic dancers for Defendant 11343 Penrose, Inc. d/b/a La Vida Gentlemen's Club (La Vida), which is managed by Defendant Cindy Chavira. Plaintiff Gabriela Rosario filed this suit on May 27, 2020, alleging twelve causes of action for violations of the Fair Labor Standards Act (FLSA), associated regulations, and various provisions of the California Labor Code and Business and Professions Code. Dkt. No. 1 (Compl.). Rosario alleges her federal claims on behalf of herself and all others similarly situated, contending that

Defendants misclassified the dancers as independent contractors in a scheme to deny them minimum wage payments and overtime pay in violation of 29 U.S.C. §§ 206 and 207, and also that Defendants' practices involving tipping violated 29 U.S.C. § 203 and 29 C.F.R. § 531.35.

The parties filed and fully briefed multiple opposed motions. On October 26, 2020, the Court granted in part Rosario's motion for conditional certification of a collective action and also granted in part and denied in part Rosario's motions to dismiss La Vida's counterclaims and to strike certain affirmative defenses. Dkt. No. 67. The Court subsequently approved the parties' jointly proposed collective action notice. Dkt. No. 84. Eleven other Plaintiffs—Mayelli Ayala, Taylor Canino, Ebony Dodson, Genevieve Fabela, Joanna Flores, Kendall Jones, Stephanie Lopez, Cassandra Maldonado, Oriyanna McDowell, Anna Rincon, and Chanda Lynette Tresvant—subsequently opted into the collective action. Dkt. Nos. 85, 86, 91, 93, 94, 95, 97.

The parties attended an all-day mediation on June 10, 2021 and reached a settlement in principle. Dkt. No. 111. The parties notified the Court of the settlement the following week and stated that "Plaintiffs will be filing a Motion for Approval of the FLSA Settlement within 30 days, if not sooner." *Id.* at 2. After four months had passed with no further filings, the Court dismissed the case without prejudice to the parties seeking leave to reopen the case. Dkt. No. 112. The parties stipulated to reopen the case so that the Court could rule on Plaintiffs' concurrently filed unopposed motion for approval of the FLSA settlement and motion to be relieved as counsel for Plaintiff Ayala. Dkt. No. 113. The Court granted the stipulation and reopened the case for that limited purpose. Dkt. No. 116. Plaintiffs later withdrew the motion to be relieved as counsel and filed a notice of voluntary dismissal of Plaintiff Ayala's individual claims. Dkt. Nos. 118, 119. Thus, the only matter remaining for adjudication is the Unopposed Motion for Approval of FLSA Settlement filed by the remaining eleven Plaintiffs.[1] Dkt. No. 114.

## II.   LEGAL STANDARD

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a

---

[1] References to Plaintiffs in the discussion that follows refer to the eleven Plaintiffs who remain in the case after Mayelli Ayala's voluntary dismissal of her claims.

stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  Although the Ninth Circuit has not specifically addressed the criteria courts should use to determine whether to approve an FLSA settlement, "district courts in the Ninth Circuit have followed the standard set forth in [*Lynn's Food*]." *Madrid v. teleNetwork Partners, LTD.*, No. 5:17-CV-04519-BLF, 2019 WL 3302812, at *3 (N.D. Cal. July 23, 2019).  Under that standard, to approve a settlement, the Court must find that (1) the case involves a bona fide dispute, (2) the proposed settlement agreement is fair and reasonable, and (3) the award of attorney's fees and costs is reasonable.  *Id.* (citing *Lynn's Food*, 679 F.2d at 1354).  "If the settlement reflects a reasonable compromise over issues that are in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'"  *Id.* (quoting *Lynn's Food*, 679 F.2d at 1354).

### III.  DISCUSSION

#### A.  Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Id.* (quoting *Jennings v. Open Door Mktg., LLC*, No. 15-CV-4080-KAW, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018)).  A bona fide dispute requires "some doubt whether the plaintiffs will be able to succeed on the merits of their FLSA claims," because otherwise the FLSA settlement would allow an employer to avoid paying out the full cost of complying with the FLSA.  *Id.*  "The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties." *Saleh v. Valbin Corp.*, No. 17-CV-00593-LHK, 2018 WL 6002320, at *2 (N.D. Cal. Nov. 15, 2018) (citing *Lynn's Food*, 679 F.2d at 1353 n.8).

The parties have strenuously litigated this case for more than a year and take different positions about the proper classification of Plaintiffs and whether the dance fees collected by the Defendants belonged to Defendants or were tips belonging to Plaintiffs.  Moreover, the parties represent that Plaintiffs lack supporting documents to corroborate the amount of shifts they claim to have worked, and Defendant's records conflict with Plaintiffs' accounts.  These factual disputes preclude certainty as to whether, or in what amount, Plaintiffs are entitled to recover under the FLSA.  Accordingly, the Court finds that this case involves a bona fide dispute about FLSA liability.

B.  **Fairness and Reasonableness**

"To determine whether the settlement is fair and reasonable, the Court looks to the 'totality of the circumstances' and the 'purposes of [the] FLSA.'" *Madrid*, 2019 WL 3302812, at *4 (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016)). In making this determination, courts consider the following factors: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *Id.*; *Selk*, 159 F. Supp. 3d at 1173.

1. Range of Possible Recovery

Plaintiffs have calculated the estimated damages each Plaintiff could recover based on the shifts she claims she worked beginning three years before the case was filed. Those figures (which represent the maximum possible recovery) are set forth in the following table, along with the gross award provided for each Plaintiff in the settlement agreements and the net amount each Plaintiff will receive after deduction of attorney's fees and costs:

| **Plaintiff** | **Estimated Damages** | **Gross Settlement Award** | **Net Award** |
|---|---|---|---|
| Canino | $40,000 | $30,000 | $16,034.23 |
| Dodson | $25,000 | $20,000 | $10,534.23 |
| Fabela | $45,000 | $30,000 | $16,034.23 |
| Flores | $35,000 | $25,000 | $13,234.23 |
| Jones | $35,000 | $25,000 | $13,234.23 |
| Lopez | $15,000 | $25,000 | $13,234.23 |
| Maldonado | $40,000 | $25,000 | $13,234.23 |
| McDowell | $35,000 | $25,000 | $13,234.23 |
| Rincon | $40,000 | $30,000 | $16,034.23 |
| Rosario | $20,000 | $10,000 | $5,034.23 |
| Tresvant | $25,000 | $20,000 | $10,534.23 |

"[C]ourts in the Ninth Circuit have found FLSA cases settling for approximately 25%–35% of the total possible recovery to be reasonable." *Madrid*, 2019 WL 3302812, at *4 (collecting cases). Here, the gross settlement awards are well above that benchmark, and the net awards to each Plaintiff are within or above

the range regularly found to be reasonable. Accordingly, the range of possible recovery supports a finding that the proposed settlement is fair and reasonable.

   2. Stage of Proceedings and Discovery Conducted

The second fairness factor seeks to ensure that the parties "have an adequate appreciation of the merits of the case before reaching a settlement." *Jennings*, 2018 WL 4773057, at *5. "So long as the parties have sufficient information to make an informed decision about settlement, this factor will weigh in favor of approval." *Id.*

This case was litigated for a year before the mediation, during which time the parties engaged in written discovery and briefed multiple opposed motions. The Court is persuaded that the parties had adequate information to make an informed decision about settlement. This factor therefore supports approval of the settlement.

   3. Seriousness of Litigation Risks

"Courts will approve an FLSA settlement when there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all." *Madrid*, 2019 WL 3302812, at *5. Here, Plaintiffs lack documentary proof to support the hours and shifts they claim to have worked, and supervisors employed by Defendants are prepared to offer contradictory evidence. Moreover, Plaintiffs may have difficulty providing that Defendants' alleged violations were willful. Thus, proceeding to trial could result in the Plaintiffs receiving less than the settlement amount or even nothing at all. This factor weighs in favor of approval.

   4. Scope of Release Provisions

"Courts in this district have rejected blanket releases of all potential claims against the employer for all unlawful acts whatsoever," but "when a district court in the Ninth Circuit approves an FLSA collective action settlement, it may approve a release of any claims sufficiently related to the current litigation." *Id.* (collecting cases). The settlement agreements in this case include two release provisions, which provide in relevant part:

> 7. Entertainer hereby releases and forever discharges COMPANY [and related parties] . . . from any and all claims under the Fair Labor Standards Act and the California Labor Code, that Entertainer has, or

> may have, as of the date this Agreement is signed, which arise out of her relationship with COMPANY, or otherwise.
>
> 8. Entertainer releases all claims under the Fair Labor Standards Act and the California Labor Code, arising from or relating to her relationship with and any services she may have provided to or for the benefit of COMPANY or any of the Released Parties, that she may have as of the date hereof.  This release includes, but is not limited to, all such claims that were or could have been asserted in a Complaint or demand for arbitration.  To the full extent permitted by law, Entertainer . . . waives, releases and forever discharges, and agrees that she will not in any manner institute, prosecute or pursue, any complaint, claim, lawsuit, clam for relief, demand, suit, action or cause of action, whether at in law or in equity, which she could assert at common law or under any statute, rule, regulation, order or law, whether federal, state, or local, or on any grounds whatsoever, including without limitation, any claim under the Fair Labor Standards Act; the California Labor Code; any claims for unpaid wages, and any statute or wage order (federal or state) relating to her employment, and claims against COMPANY and/or the Released Parties with respect to any event, matter, claim, under the Fair Labor Standards Act and the California Labor Code arising out of Entertainer's relationship with COMPANY and/or the Released Parties and/or the termination of that relationship.

Dkt. No. 114-2 (Canino Settlement Agreement and Release).

Paragraph 7 is limited to the FLSA and California Labor Code provisions at issue in this case and is plainly permissible.

Paragraph 8 is less clearly drafted and contains broader language (claims "under any statute, rule, regulation, order or law, whether federal, state, or local, or on any grounds whatsoever") that, in isolation, could be construed as releasing claims wholly unrelated to this litigation. See *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012) ("Courts have found that overly broad release provisions, which release a Defendant from all claims to settle their wage claims, including claims that are unrelated to the claims asserted in the complaint, are improper in FLSA and class action settlements."). The settlement agreement in *McKeen-Chaplin*, which the court rejected, expressly waived claims under Title VII, 42 U.S.C. § 1983, the

ADA, and a host of other statutes and torts unrelated to the FLSA, and waived claims that the plaintiff "did not know or suspect to exist at the time of execution hereof." *Id.*, at *4. Paragraph 8 contains no such express waivers of unrelated and unknown claims, which would be impermissible, and in light of the other limiting language in Paragraph 8, the Court construes the release of claims in Paragraph 8 to include only claims related to the FLSA and California Labor Code claims in the current litigation. On that understanding, the release provisions do not preclude approval of the settlement.[2]

    5. Experience and Views of Counsel and Views of Parties

"In determining whether a settlement is fair and reasonable, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Madrid*, 2019 WL 3302812, at *5. Here, counsel for both sides have extensive experience litigating wage and hour cases and handling complex and class actions, and their motions demonstrate familiarity with the details of this case. All remaining Plaintiffs have signed the settlement agreements, and no objections have been raised. This factor weighs in favor of approval.

    6. Possibility of Fraud or Collusion

Finally, the Court finds that nothing in the record indicates the possibility that the settlement is a product of fraud or collusion. To the contrary, this case was extensively litigated and the settlement was reached after a full-day mediation with an experienced mediator. The majority of the settlement fund will be distributed to the Plaintiffs rather than their lawyers, in varying amounts that generally correspond to the individual Plaintiffs' hours worked and the value of their claims.

Accordingly, the Court approves the proposed settlement, finding it to be fair and reasonable.

---

[2] If the parties disagree with the Court's interpretation of Paragraph 8 and instead intend for Plaintiffs through the settlement agreements to release claims unrelated to the FLSA and California Labor Code claims in this litigation, they shall notify the Court of their disagreement within ten days after the entry of this Order, and the Court will vacate the Order and reevaluate whether the settlement can be accepted. **Failure to object within ten days will be construed as an indication of the parties' agreement with the Court's construction of the release.**

### C.  Award of Attorney's Fees and Costs

"Attorney's fees and litigation costs may also be awarded as part of an FLSA settlement if they are reasonable." *Id.*, at *6.  Here, Plaintiffs calculated a lodestar attorney's fee award of $129,762.50 based on the extensive work they performed in this case, but they seek to recover $119,250 in fees—a reduction of more than $10,000 from the lodestar.  This reduced fee award represents 45% of the total settlement and is consistent with awards approved for Plaintiffs' counsel by courts in several similar cases involving FLSA wage and hour claims by exotic dancers.  Moreover, courts in other FLSA cases have sometimes approved attorney's fee awards that vastly exceeded the plaintiffs' recovery.  *See, e.g.*, *Lucio-Cantu v. Vela*, 239 F. App'x 866, 867 (5th Cir. 2007) (affirming award of $51,750 in attorney's fees where plaintiffs recovered less than $5,000).  The Court finds the requested fees to be reasonable and appropriate.  Moreover, the Court finds that the requested award of $5,123.47 in costs is reasonable and supported by adequate documentation.  Dkt. Nos. 114-14, 114-16.

### IV.  Order

Because the Court finds that the settlements are fair and reasonable and that they further the purposes of the FLSA, the Plaintiffs' Unopposed Motion for Approval of FLSA Settlement is **GRANTED**.  The settlement of $265,000 is **APPROVED**, with $140,626.53 to be allocated to Plaintiffs, $119,250 in reasonable attorney's fees to be paid to Kristensen LLP and Ellzey & Associates, PLLC, and $5,123.47 to reimburse costs, all of which is to be allocated as detailed in the Settlement Agreements (Exhibits 1–11 to the Declaration of John P. Kristensen).

The Court having adjudicated the limited matters for which this case was reopened, the case is once again **CLOSED**.